IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00999-RBJ

CHRISTOPHER RINKE,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

---

ORDER

---

This matter is before the Court on review of the Social Security Administration ("SSA")
Commissioner's decision denying claimant Christopher Thomas Rinke's application for
disability insurance benefits under Title II of the Social Security Act. Jurisdiction is proper
under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the
Commissioner's decision.

## STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing
a final decision by the Commissioner, the District Court examines the record and determines
whether it contains substantial evidence to support the Commissioner's decision and whether the
Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th
Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other
evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial
evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561
F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Reversal may also be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed.  *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

Mr. Rinke is 56 years old.  ECF No. 16 at 3.  He completed a bachelor's degree and worked as an engineer for many years.  *Id.* (citing R. 95, 247, 299–300, 2193).  He lost his job in 2008 after a motorcycle accident, and he last worked in 2011.  R. 60, 276.  Mr. Rinke alleges that he became disabled in July 2013 primarily due to back pain, but he also alleges that he suffers from a variety of other medical issues, including post-concussive syndrome following a head injury; degenerative disc disease of the cervical, thoracic, and lumbar spine; dysfunction of both shoulders; obesity; diabetes with peripheral neuropathy and diabetic retinopathy; venous insufficiency causing peripheral edema; coronary artery disease; gastroesophageal reflux disorder; memory and concentration problems; affective disorder; and alcoholism.  ECF No. 15 at 3; ECF No. 16 at 3.

### A. <u>Procedural History</u>.

Mr. Rinke filed a claim for disability insurance benefits on September 20, 2012.  R. 86.  Mr. Rinke initially alleged disability beginning May 2007 following a motorcycle accident; he later amended his alleged onset date of disability to July 1, 2013.  ECF No. 16 at 3 n.5; *see also* R. 13, 72, 121.  His initial claim for disability benefits was denied on February 4, 2013.  R. 104.  Mr. Rinke then requested a hearing, which was held before Administrative Law Judge ("ALJ") William Musseman on January 28, 2014.  R. 47.  The ALJ issued a decision denying benefits on March 13, 2014.  R. 16, 110.  The Appeals Council remanded this decision by an order dated September 1, 2015.  R. 16, 105.  After a second hearing on January 7, 2016, the same ALJ issued

another unfavorable decision on February 10, 2016. R. 13, 16, 202. The Appeals Council denied Mr. Rinke's Request for Review on February 24, 2017, thus rendering the ALJ's determination the final decision of the Commissioner for purposes of judicial review. R. 1. Mr. Rinke filed a timely appeal in this Court. This appeal has been briefed, although Mr. Rinke did not file a reply. *See* ECF Nos. 15, 16.

### B. <u>The ALJ's Decision.</u>

The ALJ issued an unfavorable decision after evaluating the evidence according to the SSA's standard five-step process. R. 13–36. Because substance abuse was an issue in this case, the ALJ was required to determine whether substance abuse was a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). To do so, the ALJ conducted the five-step process twice: first to determine whether Mr. Rinke would be considered disabled when taking the substance abuse into account, and second to determine whether Mr. Rinke would still be considered disabled without taking into account the substance abuse. *See Sax v. Colvin*, 31 F. Supp. 3d 1156, 1161 (E.D. Wa. 2014).

#### *i. The ALJ's Determination Accounting for Substance Abuse.*

At the first step in the assessment in which the ALJ accounted for Mr. Rinke's substance abuse, the ALJ found that Mr. Rinke had not engaged in substantial gainful activity since his alleged onset date of July 1, 2013. R. 19. At step two, the ALJ found that Mr. Rinke had the following severe impairments: degenerative disc disease of the lumbar, thoracic, and cervical spine; status post closed head injury; affective disorder; dysfunction of the left shoulder; substance abuse; and obesity. *Id.* The ALJ found that two of Mr. Rinke's alleged conditions or impairments either did not represent medically determinable impairments or were nonsevere, namely acute displaced fracture of the distal left clavicle and difficulties with vision. *Id.* At step

three, the ALJ concluded that Mr. Rinke did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then found that Mr. Rinke retained the residual functional capacity ("RFC") to perform light work except that he cannot perform work at over chest level, cannot climb ladders or scaffolds, and cannot use foot or leg controls. R. 22. Mr. Rinke was deemed capable of performing work at the special vocational preparation level of SVP 2 or less, with occasional interaction with the public. *Id.* Mr. Rinke "would have multiple absences from the workplace each month due to alcohol abuse." *Id.* The ALJ reached this conclusion based on his assessment that while Mr. Rinke's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Mr. Rinke's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 18.

At step four the ALJ determined that Mr. Rinke is unable to perform any of his past relevant work. R. 29. At step five the ALJ found that there are no jobs in the national economy that Mr. Rinke is able to perform. R. 30. Thus, the ALJ concluded that "considering all the claimant's medically determinable impairments, including drug and alcohol abuse, the claimant's impairments are disabling." R. 29; *see also* R. 31.

### *ii. The ALJ's Determination Excluding Substance Abuse.*

The ALJ then conducted the five-step assessment again, but this time he excluded substance abuse. R. 31. At step two the ALJ found Mr. Rinke's remaining impairments would still be deemed severe "because they impose more than a minimal limitation on the claimant's ability to perform basic physical or mental work activities." *Id.* (citing Social Security Ruling ("SSR") 96-3p). At step three the ALJ found that none of these impairments met a listing. *Id.*

The ALJ determined that Mr. Rinke would have the same RFC in the absence of substance use as he did when accounting for substance abuse, with the exception that he would not be expected to have attendance issues at work when substance abuse was not a factor. R. 33. At step four the ALJ found that Mr. Rinke would be unable to perform past relevant work even when substance abuse was not a factor. R. 35. At step five, however, the ALJ found that there were jobs that existed in significant numbers in the national economy that Mr. Rinke could perform. *Id.* As a result, the ALJ concluded that Mr. Rinke would not be disabled were it not for his substance abuse. R. 36.

## DISCUSSION

Mr. Rinke contends that the ALJ erred in three ways: 1) by failing to provide substantial evidence supporting his finding that Mr. Rinke would not be disabled independent of his alcohol use; 2) by failing to discuss Mr. Rinke's impairments of diabetes, diabetic neuropathy, and edema; and 3) by failing to consider Mr. Rinke's obesity as ordered by the Appeals Council upon remand. ECF No. 15 at 5, 9, 11. I will consider each argument in turn.

**A. Alcohol Use.**

As noted above, under SSA regulations, if an ALJ finds that a claimant is disabled and there is medical evidence of alcoholism, the ALJ "must determine whether [the claimant's] . . . alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). The "key factor" the ALJ must evaluate in making this determination is whether the ALJ would still find the claimant disabled if he stopped using alcohol. *Id.* at § 404.1535(b). Thus, an ALJ is to evaluate which of the claimant's current physical and mental limitations would remain if the claimant stopped using alcohol, and then the ALJ will determine whether any or all of these remaining limitations would be disabling. *Id.* at § 404.1535(b)(2). If the ALJ

concludes that a claimant's remaining limitations would not be disabling in the absence of alcoholism, the ALJ will find that alcoholism is a contributing factor material to the determination of disability. *Id.* at § 404.1535(b)(2)(i). If the remaining limitations would be disabling in the absence of alcoholism, then the claimant will be found disabled independent of his alcoholism, and his alcoholism will not be deemed a contributing factor material to the determination of disability. *Id.* at § 404.1535(b)(2)(ii).

In this case, as noted, the ALJ concluded that Mr. Rinke's impairments would not be disabling but for his alcohol abuse, and that his alcohol use was therefore a contributing factor material to the determination of disability. R. 26, 36. Mr. Rinke argues that in making this determination, the ALJ "failed to articulate which physical and mental limitations would remain in the absence of his alcohol use," and instead merely citied the documents in the record that support his conclusion. ECF No. 15 at 6. As a result, Mr. Rinke argues that the ALJ's conclusion that his alcohol use was a material factor was not based on substantial evidence. *Id.* In contrast, Mr. Rinke argues that his remaining impairments are severe even in the absence of alcohol abuse and cause him significant limitations. *Id.* In support of his contention, Mr. Rinke cites evidence in the record that he experienced pain and other problems even when he abstained from alcohol. *Id.*

The Commissioner contends that contrary to Mr. Rinke's argument, the ALJ in fact clearly indicated that "if Plaintiff stopped drinking, he would have all the same physical and mental work abilities, except that he would no longer have 'multiple absences from the workplace each month due to alcohol abuse,' and thus would no longer be disabled." ECF No. 16 at 10. In other words, the ALJ need not have specified which of Mr. Rinke's physical and mental limitations would remain in the absence of his alcohol use, since the ALJ made it clear

that they would all remain, and that the only difference would be Mr. Rinke's attendance at work. *Id.* However, the Commissioner also argues—apparently contradicting her preceding point—that Mr. Rinke's other symptoms would improve in the absence of substance abuse. *Id.* at 11–12. The Commissioner notes that the medical evidence in the record included statements that Mr. Rinke's mental functional abilities, diabetes-related symptoms, and edema would likely improve if he stopped drinking. *Id.* at 12. Nonetheless, the Commissioner's main point appears to be that "the ALJ accepted that Plaintiff's other impairments and their limiting effects continued even in the absence of alcohol use." *Id.*

Although the ALJ did consider evidence that alcohol abuse exacerbated Mr. Rinke's other impairments, I agree with the Commissioner that any such considerations were not material to the ALJ's ultimate conclusion that the limiting effects of Mr. Rinke's other impairments would not change in the absence of his substance abuse. The ALJ observed in his decision that opinion evidence indicated that alcohol abuse likely negatively impacted Mr. Rinke's mental status functioning and that "the objective findings support that the severity of the claimant's symptoms would decrease in the absence of substance abuse." R. 26, 34. The ALJ listed improvements in Mr. Rinke's mental status, mood and affect; sensory function, reflexes, gait and station; and edema, atrophy, straight leg raise test, normal sensation, deep tendon reflexes, and range of motion. R. 34. However, despite these observations, the ALJ determined that Mr. Rinke's RFC would be the same with or without substance abuse, with the exception that he "would have multiple absences from the workplace each month due to alcohol abuse," and that without the alcohol abuse he would not have the absences. R. 22, 33. Therefore, although the ALJ's observation that some of Mr. Rinke's symptoms would improve in the absence of substance use might have led to confusion, the ALJ did make clear that any abatement in other

symptoms would not affect the RFC calculation.  R. 34.  Moreover, even if it was error for the

ALJ to find, without clarifying, that Mr. Rinke's other limitations would improve or be abated in

the absence of substance abuse, any such error was harmless because the ALJ did not alter the

RFC in reliance on such a finding.  Instead, the ALJ's reasoning satisfied the regulations'

requirement that the ALJ determine which limitations would remain and whether they would be

disabling: in this case, all other limitations would remain, but none of them would be disabling in

the absence of substance abuse.  *See* 20 C.F.R. § 404.1535(b)(2).

Mr. Rinke does not dispute the remainder of the ALJ's RFC determination or the ALJ's

rationale with respect to the absences caused by his substance use disorder,[1] but merely the

ALJ's determination of which limitations remained absent the substance abuse.  Because the

ALJ's determination on this point satisfies the regulations, there is no need to remand to the ALJ

for further explanation on this point.  Subject to the ultimate resolution of Mr. Rinke's second

and third arguments, discussed below, this would put Mr. Rinke in the position of needing to

pursue treatment per 20 C.F.R. §§ 404.1536-1541.

## B. Diabetes, Peripheral Neuropathy, and Lower-Extremity Edema.

Mr. Rinke next argues that the ALJ failed to consider Mr. Rinke's diabetes, peripheral

neuropathy, and lower-extremity edema at steps two, four, and five in the five-step process.  ECF

No. 15 at 9, 11.  Mr. Rinke's application for disability, which he initially filed in September

2012, alleged both neuropathy and diabetes mellitus as impairments.  R. 87.  The record indicates

that Mr. Rinke was diagnosed with diabetes and was told he had "some neuropathy" in his hands

and feet; the neuropathy in his feet caused balance problems and pain while walking, while the

---

[1] It is not entirely clear what evidence in the record the ALJ relies on to determine the extent of Mr.
Rinke's absences from work caused by his substance abuse, but there is substantial evidence in the record
that Mr. Rinke's substance abuse is of such a nature that it could conceivably cause such absences.
Regardless, Mr. Rinke's failure to dispute this point waives the issue.

neuropathy in his hands affected his dexterity. R. 78, 79. Mr. Rinke's record also indicates that he suffered from edema in his lower extremities during the period at issue. *See, e.g.*, R. 2260, 2274, 2287. Despite the record evidence of these impairments, Mr. Rinke notes that while the ALJ found at step two that his diabetic retinopathy was non-severe, he did not discuss his diabetes, peripheral neuropathy, or edema at all in the severity determination at step two. ECF No. 15 at 11. Moreover, at steps four and five, where the ALJ is required to consider both severe and non-severe medically determinable impairments, Mr. Rinke alleges that the ALJ again failed to discuss these three impairments. *Id.* As a result, Mr. Rinke argues that the ALJ's RFC determination is not supported by substantial evidence. *Id.*

At step two, where an ALJ considers the medical severity of a claimant's impairments, the ALJ must first determine whether the impairments are medically determinable. 20 C.F.R. § 404.1520(a)(ii). A medically determinable impairment is an "'anatomical, physiological, or psychological abnormality which can be shown by medically acceptable clinical and laboratory diagnostic techniques.'" *Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1041 (D. Colo. 2015) (quoting 20 C.F.R. § 404.1508)). The ALJ must then take into account "*all* medically determinable impairments, severe or not" to determine the claimant's RFC and, relatedly, to determine whether a claimant can perform past work or other work at steps four and five, respectively. *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (emphasis in original); *see also* 20 C.F.R. § 404.1545(a)(2). "It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "[A] failure to find an impairment medically determinable is essentially a step-four error because the ALJ is only required to consider medically determinable impairments in the

RFC at step four, whether severe or not." *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013)). "But even then, such error would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC." *Id.*

As an initial matter, the Commissioner contends, and I agree, that the ALJ's failure to discuss the three impairments at issue at step two was harmless, since the ALJ deemed other impairments severe "and proceeded to evaluate the effects of all of Plaintiff's impairments in determining his RFC." ECF No. 16 at 15 n.14; *see also Ray* 657 F. App'x at 734 ("[A]n error in determining an impairment's severity at step two . . . is not reversible if the ALJ proceeds further to evaluate other impairments."). Thus, the remaining question is whether the ALJ's alleged failure to discuss these impairments at steps four and five constituted reversible error.

First, to be fair, the ALJ did mention neuropathy and edema in his RFC discussion. He acknowledged Mr. Rinke's claim of neuropathy in his hands and feet. R. 22, 23. He noted Dr. Jendry's finding in October 2015 that, upon examination, Mr. Rinke had a normal gait without weakness, edema or atrophy. R. 25, 27. He also mentioned Dr. Erickson's finding in October 2013 that Mr. Rinke had "controlled diabetes." R. 28. Whether the ALJ deems these impairments severe or not, so long as they are medically determinable the ALJ should assess their impact on Mr. Rinke's RFC for steps four and five. *See Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) ("When assessing a claimant's FRC, the ALJ must consider all the relevant evidence in the record."). Although I find it to be a close call, I conclude that the ALJ's mention of these conditions falls short of a specific assessment of their impact on Mr. Rinke's RFC. *See Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004) (finding that an ALJ's

failure to consider the combined effect of various alleged impairments on the claimant's ability to perform work-related activities required reversal of the ALJ's decision).

The Commissioner counters that the ALJ's RFC finding was supported by substantial evidence and applied the correct legal standards, and that as a result Mr. Rinke's "narrow[] and indirect[] challenges to the RFC" based on the ALJ's failure to evaluate these three impairments should be rejected. ECF No. 16 at 14–15. This argument essentially attempts to minimize the problem, not to deny it.

The Commissioner argues that the ALJ's reference to "the entire record" and "all symptoms" in determining Mr. Rinke's RFC constituted sufficient consideration of the three impairments. *Id.* at 16 (citing *Bradley* 643 F. App'x at 676 (finding an ALJ had sufficiently discussed an impairment where he averred that he considered "the entire record" and "all symptoms"). But *Bradley* is inapposite here. In *Bradley* the ALJ had discussed the hand impairment at issue "in detail at the second step in the analysis" and concluded that the impairment was not severe. 643 F. App'x at 676. Then at the fourth step the ALJ noted his obligation to consider all impairments, including those deemed non-severe, and stated that he had indeed taken into account "'the entire record' and 'all symptoms.'" *Id.* The Tenth Circuit noted that "[i]t is clear this included Bradley's hand impairments because the ALJ discussed them in detail earlier in the decision." *Id.* Though the *Bradley* court also indicated that "'our practice is to take the ALJ at his word'" when he "'indicates he has considered all the evidence,'" the court emphasized that its holding was based on the fact that "the record shows the ALJ considered Bradley's hand impairments in determining his RFC." *Id.* (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)). In this case, the ALJ's failure to consider Mr. Rinke's diabetes, neuropathy, or edema at the second, fourth, or fifth steps goes beyond the

"'merely technical omission[]'" contemplated in *Bradley*. *Id.* (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)). Unlike in *Bradley*, there is no convincing indication in the ALJ's decision in this case that he actually did consider these impairments in his RFC decision.

The Commissioner contends that the ALJ's citations to evidence in the record in which diabetes, neuropathy, and edema were discussed indicates sufficient consideration of these impairments. ECF No. 16 at 16. However, such references do not amount to actual discussion of the impairments. The record evidence the ALJ cited was not limited to a discussion of these three impairments, and it is therefore not clear simply from his references to this evidence that, or how, the ALJ actually considered these impairments. Moreover, though the ALJ asked Mr. Rinke about his diagnosis of diabetes and his neuropathy during the hearing, it is not clear whether or how the ALJ relied on Mr. Rinke's testimony about these impairments in making his decision. R. 78–79. Thus, the ALJ's general consideration of evidence in the record does not satisfy his obligation to consider these three medically determinable impairments in assessing Mr. Rinke's RFC.

The Commissioner's citation of *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016), also fails to support her argument that because the ALJ considered evidence addressing these impairments, any error in not finding these impairments medically determinable should be obviated. ECF No. 16 at 6. In *Ray*, the claimant argued that the ALJ had erred in finding that a particular impairment was not medically determinable at step two, and that the ALJ also should have considered two other impairments at step four as non-severe impairments. 657 F. App'x at 734. The Tenth Circuit noted that the ALJ's error in failing to find the impairments medically determinable was obviated because the ALJ had nonetheless "expressly addressed" each of the

impairment in assessing the RFC.  *Id.* at 734–35.  In this case, in contrast, the ALJ did not expressly address any of the three impairments at issue, but as noted, instead merely referenced evidence that in part discussed the impairments.  Because a court must be able to "follow the adjudicator's reasoning in conducting [its] review," the ALJ's opaque reference to other evidence in the record is insufficient to allow the Court to determine whether the ALJ actually considered these impairments.  *Keyes-Zachary v. Astrue*, 695 F.3d at 1166.  As such, I am not satisfied that the ALJ actually considered these impairments at steps two, four, and five, as required.

Finally, I am unconvinced by the Commissioner's argument that "the record did not otherwise support additional RFC limitations because of Plaintiff's diabetes, neuropathy, or edema . . . in the absence of alcohol."  ECF No. 16 at 16.  The Commissioner cites various medical records substantiating limitations possibly attributable to Mr. Rinke's diabetes, neuropathy, and edema, and she discusses why several of these limitations would likely not exist or be as problematic were Mr. Rinke not also drinking.  Such an argument is essentially an impermissible *post hoc* rationalization of the ALJ's decision, and it also tends to contradict the Commissioner's argument that the ALJ's RFC determination was not based on changes in any of Mr. Rinke's limitations in the absence of alcohol.

Further discussion of these impairments might not change the overall result, just as further discussion of the effects of Mr. Rinke's obesity, *see infra,* might not change the overall result.  In my view, the ALJ's evaluation of Mr. Rinke's claimed disabilities, and the overwhelming impact of his inability to control his alcohol consumption (and apparently lack of treatment for that disease), was generally thorough and persuasive.  But that further discussion is

necessary to comply with the requirements of the law, and it is for the ALJ, not this Court, to determine whether that further discussion might change the outcome.

## C. **Appeals Council's Instruction.**

Finally, Mr. Rinke argues that the ALJ failed to follow the Appeals Council's command upon remand when he failed to elaborate how he took into account Mr. Rinke's obesity in formulating his RFC. ECF No. 15 at 12. In its remand order of September 2015, the Appeals Council noted that the ALJ had "identified obesity as a severe impairment" in his initial decision, but he had not "include[d] an adequate evaluation of obesity and its effect on the claimant's functioning as required by Social Security Ruling 02-1p." R. 107. The Appeals Council explained that according to SSR 02-1p, "[w]hen obesity is an impairment, an assessment should be made of the effect it has upon the individual's ability to perform routine movement and necessary activity within the work environment." R. 106. Therefore, the Appeals Council ordered the ALJ to "[e]valuate the claimant's obesity" as required by SSR 02-1p. R. 107. SSR 02-1p provides that "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p, 2002 WL 34686281, at *7 (Sept. 12, 2002).

In his decision on remand, the ALJ found that Mr. Rinke's obesity was a severe impairment at step two in the five-step process. R. 19. The ALJ noted Mr. Rinke's Body Mass Index, which indicated his obesity, and the ALJ "stated that he took Plaintiff's obesity into account." ECF No. 16 at 19. The Commissioner urges the Court to be satisfied with this statement and to simply "take the ALJ at his word." *Id.* However, as Mr. Rinke points out, while the ALJ articulated the potential impacts of obesity in general and stated that he had taken these considerations into account, there is no express discussion of Mr. Rinke's obesity or its

effect on his health and other impairments. ECF No. 15 at 12–13. I agree with Mr. Rinke that this does not suffice.

The Commissioner argues that SSR 02-1p "does not automatically suggest that such effects [of obesity] exist in every case, nor does it mandate additional RFC restrictions or a finding of 'disabled' under any particular circumstances." ECF No. 16 at 18 (citing 2002 WL 34686281). Though true, this is not the point. The ALJ must provide more than a rote recitation of the "possible effects" of obesity. *See Hulen v. Astrue*, 909 F. Supp. 2d 1065, 1071 (S.D. Iowa 2012) ("[O]n remand the ALJ was instructed to evaluate Plaintiff's obesity pursuant to SSR 02-1p . . . . Although the ALJ noted that he considered Plaintiff's obesity, his analysis is unsupported by any evidence whatsoever."). The Appeals Council's remand required an assessment of the effects of his obesity on his specific ability to function. *See, e.g.*, *Jones v. Astrue*, No. CV-11-8-3772-NE, 2013 WL 360313, at **1-3 (N.D. Ala. Jan. 28, 2013) (discussing the required evaluation an ALJ must make of the effect of obesity on a claimant's RFC and ability to perform routine movement and necessary physical activity within the work environment).

The Commissioner cites *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004), in which the Tenth Circuit found no error when an ALJ discussed "possible ramifications of [the claimant's] obesity when he addressed the lack of marked arthritic pain, joint deformity, or musculoskeletal impairment." However, in the present case, as noted, the ALJ did not engage in any such discussion with respect to Mr. Rinke's obesity, instead describing the potential ramifications of obesity in general.

The Commissioner also cites *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007), in which the Tenth Circuit instructed that a court should generally "take a lower tribunal at its word

when it declares that it has considered a matter." However, in *Flaherty*, the Tenth Circuit found and discussed evidence that the ALJ had actually considered the matter at issue, emphasizing that "the ALJ's discussion of the evidence and his reasons for his conclusions *demonstrate that he considered* all of Ms. Flaherty's impairments." 515 F.3d at 1071 (emphasis added); *see also Bradley*, 643 F. App'x at 676 (noting that courts generally take ALJs at their word but nonetheless examining the ALJ's decision to confirm that he had actually considered the matter as he claimed). In this case, in contrast, outside of the ALJ's repetition of the general implications of obesity and his claim that he considered the effects of obesity in this case, there is simply no explanation as to how Mr. Rinke's obesity affects his ability to function in a work environment. As such, the ALJ has failed to follow the order of the Appeals Council on remand. *See Carstensen v. Colvin*, 178 F. Supp.3d 1130, 1139 (D. Colo. 2016) ("Boilerplate language, unconnected to any evidence in the record, will not suffice to support an ALJ's conclusion.").

I am further unconvinced by the Commissioner's argument that the reason the ALJ "did not further discuss Plaintiff's obesity" was because "this reasonably reflected the lack of record evidence suggesting it caused any particular functional limitations beyond those the ALJ included in the RFC finding." ECF No. 16 at 19. While this is a logical explanation, it is another *post hoc* rationalization for the ALJ's reasoning. Especially in the context of an explicit instruction from the Appeals Council on remand, the ALJ himself could have noted that he had examined Mr. Rinke's obesity but found no functional limitations. Instead, by failing to provide any express discussion of Mr. Rinke's obesity beyond his assurance that he had considered it, the ALJ has not explained how Mr. Rinke's obesity did or did not affect his RFC.

I am similarly dissatisfied by the Commissioner's argument that because the ALJ provided a more restrictive RFC than Dr. Jendry, who did opine on the functional impacts of Mr.

Rinke's obesity, the ALJ "more than adequately accounted for Plaintiff's obesity." *Id.* at 20. The Commissioner again cites *Howard*, where a consultative examination report taking into account the claimant's obesity supported the ALJ's RFC determination. 379 F.3d at 948. However, in that case, as noted, the ALJ had actually discussed the ramifications of the claimant's obesity, whereas the ALJ in this case did not, instead discussing obesity in general terms. *Id.* As such, the fact that the ALJ's RFC happens to be consistent with a consultative examiner's limitations in this case—albeit more restrictive, which begs the question of whether the ALJ actually relied on that examination's limitations—is not sufficient to find that the ALJ actually considered the effects of obesity in this case as required by the Appeals Council.

Finally, the Commissioner cites *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. 2016) (unpublished), in which the Tenth Circuit found that an ALJ had properly considered the claimant's obesity. In that case "[t]he ALJ observed that none of the medical opinions specifically addressed the impact of Mr. Razo's obesity on his other impairments." 663 F. App'x at 716. The ALJ went on to note that because the claimant's obesity would have been obvious to his medical sources, they would "be expected to include the effects of obesity in the limitations indicated." *Id.* As a result, the court's conclusion that "[t]he ramifications of obesity are subsumed within the discussion of Mr. Razo's other medical conditions" is based on the ALJ's finding substantially the same. *Id.* Because in this case there was no such finding by the ALJ— let alone any discussion of Mr. Rinke's obesity beyond simply repeating the requirements of SSR 02-1p—there is no indication that the ALJ found that the ramifications of his obesity were subsumed within the discussion of his other medical conditions.

Because the ALJ failed to discuss the implications of Mr. Rinke's obesity, the ALJ's decision must be remanded for further analysis consistent with the Appeals Council's instruction.

If the ALJ is unable to provide more on the evidence in the record, then he should obtain an additional medical evaluation focused on the obesity issue.

## ORDER

For the reasons described above, the Court REVERSES and REMANDS the Commissioner's decision denying claimant Christopher Thomas Rinke's application for disability insurance benefits. Upon remand, the ALJ is instructed to follow the guidance in this order with respect to the proper consideration of Mr. Rinke's diabetes, neuropathy, edema, and obesity.

DATED this 17th day of April, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge